Jasmina Richter/Bar No. 024180
**SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
Phoenix, AZ 85012-3099
Direct Phone: (602) 532-5779
jasmina.richter@sanderparks.com

*Attorneys for Plaintiff Developers Surety
and Indemnity Company*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Developers Surety and Indemnity Company, | Case No.: |
| Plaintiff, | **PLAINTIFF'S COMPLAINT** |
| v. | |
| Coyote Creek Construction Inc., an Arizona corporation, Matthew Miller and Theresa Fossum, a married couple, | |
| Defendants. | |

Plaintiff Developers Surety and Indemnity Company ("DSI") by and for its Complaint, hereby alleges as follows.

**NATURE OF THE ACTION**

1. This is a civil action for declaratory relief through which DSI seeks a declaratory judgment, under 28 U.S.C. § 2201 *et seq.*, that the commercial general liability policies issued by DSI to Defendant Coyote Creek Construction, Inc. ("Coyote Creek") provide no coverage for the claims and damages sought in an action currently pending in the Superior Court of Arizona for Maricopa County entitled *Miller v. Coyote Creek*, Case No. CV2018-013317 ("the Underlying Action") brought by Matthew Miller and Theresa Fossum (collectively "the Millers").

2. Through this action, DSI seeks a determination from this Court that DSI has no indemnity or defense obligations towards Coyote Creek, or any other claimed insured,

or any other person or entity, who may assert claims against such insureds or claimed insureds, for any claimed damages stemming from the Underlying Action.

## PARTIES, JURISDICTION AND VENUE

3. Plaintiff DSI is a California corporation with its principal place of business in the State of California, and is therefore a citizen of California as defined by 28 U.S.C. § 1332 (c)(1).

4. Defendant Coyote Creek is an Arizona corporation with its principal place of business in Arizona and is therefore a citizen of Arizona as defined by 28 U.S.C. § 1332 (c)(1).

5. Defendant Matthew Miller is an individual who resides in Arizona and is a citizen of Arizona.

6. Defendant Theresa Fossum is an individual who resides in Arizona and is a citizen of Arizona.

7. DSI is informed and believes that the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states. Notably, the Millers have claimed cost of repair and loss of use damages that exceed $1,000,000 in the Underlying Action. Thus, this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2) because the Defendants reside in this District and the events giving rise to this action occurred in this District.

9. An actual case or controversy has arisen between the parties because the Millers have filed claims in the Underlying Action for damages against Coyote Creek. Coyote Creek has tendered the defense and indemnity of the Underlying Action to DSI and contends that that it has insurance coverage for the Underlying Action from DSI. DSI has accepted the defense of Coyote Creek subject to a reservation of rights. As such, an actual controversy exists that requires a judicial declaration to determine the respective rights and obligations of the parties.

**UNDERLYING LAWSUIT**

10. On December 18, 2018, the Millers filed a First Amended Complaint, which is the operative complaint in the Underlying Action. A copy of the Millers' First Amended Complaint ("FAC") is attached as Exhibit "1".

11. The Underlying Action arises out of the construction of a residential home located at 35227 N. 66th Place, Carefree, AZ 85377 (the "Property").

12. In October of 2014, Coyote Creek entered into a contract with Plaintiffs to construct the Property.

13. Coyote Creek hired Adroit Tile & Stone, LLC ("Adroit Tile") to install large porcelain tile flooring (the "Plane Tile") manufactured by StonePeak Ceramics, Inc. ("StonePeak") and sold by Bedrosian Phoenix, LLC ("Bedrosian").

14. In September of 2015, Adroit began installing the Plane Tile. At some point after the installing the Plane Tiles—large cracks developed in the tiles.

15. Cline Natural Stone, LLC ("Cline") took over as the tile installer, but the same cracks developed.

16. Prior to July 2016, Coyote tendered a claim under Bedrosian's one-year limited warranty against defective materials, however, Bedrosian declined due to an exclusion related to installation defects.

17. Coyote Creek continued to attempt to repair the Plane Tile but was allegedly not able to effectuate a suitable repair.

18. The project's substantial completion date was on or about September 30, 2015.

19. The Millers alleged the following causes of action in the Underlying Action: (1) breach of contract (Coyote Creek); (2) breach of express warranty (Coyote Creek); (3) breach of implied warranty (Coyote Creek); (4) breach of duty of good faith and fair dealing (Coyote Creek); (5) unjust enrichment (Coyote Creek); (6) negligence (Adroit and Clines); (7) violation of A.R.S. §§ 44-1521 to 1534 consumer fraud (StonePeak and Bedrosian); (8) violation of A.R.S. §§ 12-681 to 689 product liability (StonePeak and

Bedrosian); (9) negligent misrepresentation (StonePeak and Bedrosian); (10) negligence (StonePeak and Bedrosian); (11) res ipsa negligence (all defendants).

20. The Millers sought compensatory damages, prejudgment and post judgment interest, attorneys' fees and costs in the Underlying Action.

21. On or about February 4, 2020, Coyote Creek filed a Third-Party Complaint against Triple B Builders, LLC ("Triple B"). A copy of the Third-Party Complaint is attached as Exhibit "2".

22. The Third-Party Complaint further alleges that the Millers allege various construction defects at the Property that implicate various subcontractors' work including Triple B, which performed framing work at the Property.

23. The Third-Party complaint alleges that if Plaintiffs allegations are true, then any and all damages claimed by the Millers are the responsibility of various subcontractors including Triple B.

24. The Third-Party Complaint asserted the following causes of action: (1) common law indemnity; (2) breach of implied warranty of workmanship; and (3) negligence.

25. The Third-Party Complaint sought indemnity amounts, compensatory damages, attorneys' fees and costs.

## THE DSI POLICIES

26. DSI issued the following commercial general liability policies to the named insured Coyote Creek: policy number BIS00019338-01, effective from June 28, 2014 to June 28, 2015 ("01 Policy"), policy number BIS00019338-02, effective from June 28, 2015 to June 28, 2016 ("02 Policy"), policy number BIS00019338-03, effective from June 28, 2016 to June 28, 2017 ("03 Policy"), policy number BIS00019338-04, effective from June 28, 2017 to June 28, 2018 ("04 Policy"), and policy number BIS00019338-05, effective from June 28, 2018 to June 28, 2019 ("05 Policy").

27. The Named Insured under the 01 Policy, 02 Policy, 03 Policy, 04 Policy and 05 Policy (collectively "DSI Policies") is Coyote Creek.

28. The 02 Policy provides in the insuring agreement, in relevant part, as follows:

    **1.**    <u>Insuring Agreement</u>

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…

***

    b.  This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2) The "bodily injury" or property damage" occurs during the policy period; and

(Ex. 3, 02 Policy, Section I(1)(a) and (b).)

29. The insuring agreements of the DSI Policies were amended through Endorsement ID 01 02 08 08 (Continuous or Progressive Injury and Damage Exclusion), which provides, in relevant part, as follows:

Paragraphs 1.b.(3), 1.c. and 1.d.(1), (2) and (3) of the Insuring Agreement of COVERAGE A-BODILY INJURY AND PROPERTY LIABILITY (Section I-Coverages) are replaced with the following:

c. This insurance does not apply to any damages because of, or related to "bodily injury" or "property damage" that is "continuous or progressive":

    (1) if the "bodily injury" or "property damage" first existed, or was alleged to have first existed, prior to the policy period; or

    (2) if the "bodily injury" or "property damage" was, or was alleged to be, taking place prior to the policy period, even if actual or alleged "bodily injury" or "property damage" continued during the policy period; or

>> (3) if the "bodily injury" or "property damage" was caused by, or was alleged to have been caused by, conditions that existed prior to the policy period and that resulted in "bodily injury" or "property damage" taking place during the policy period.
>
> d. All "continuous or progressive" "bodily injury" and "property damage" arising out of "your work" on a single project or development, and included in the "products-completed operations hazard", shall be deemed to have occurred at the time of the first such "bodily injury" or "property damage" and to have arisen out of the same "occurrence." A single project or development includes all phases of the project or development.

***

> f. If the term of this policy is more than one annual period, the most we will pay for "continuous or progressive" "bodily injury" or "property damage" taking place over a period longer than one year is the applicable limit of insurance shown in the Declarations for the first annual policy period in which such "bodily injury" or "property damage" occurred, or was alleged to have occurred, whichever is earlier; but we will not pay more than we are legally obligated to pay under paragraph 1.a. of COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

***

> The following definition is added to Section V-DEFINITIONS:
>
> "Continuous or progressive" means "bodily injury," "property damage" or a "personal and advertising injury" that progresses or continues over time, even if latent, cumulative, changing, evolving, deteriorating, intermittent or repeated.

30. Under the insuring agreement, there is only coverage if "property damage" is caused by an "occurrence" and the "property damage" occurs during the policy period. According to the FAC, Adroit began installing the Plane Tile, which is the subject of the Suit, in September of 2015—three months after the expiration of the 01 Policy.

31. As such, there is no potential for coverage or "property damage" under the 01 Policy and DSI declined coverage with respect to the 01 Policy.

32. According to the FAC, the cracks in the Plane Tiles occurred sometime between September of 2015 and July of 2016 or during the 02 Policy which is effective from June 28, 2015 to June 28, 2016.

33. DSI declined coverage under the 03, 04, and 05 Policies based on the Amendment to the Insuring Agreement ID 01 02 08 08 Continuous or Progressive Injury and Damage Exclusion. The endorsement provides that "property damage" will be deemed to have occurred at the time of the first such "property damage" which is during the 02 Policy.

34. DSI is providing a defense to Coyote Creek subject to a reservation of rights under the 02 Policy. A copy of the 02 Policy is attached as Ex. 3.

35. The 02 Policy contains limits of liability of $1,000,000 each occurrence, $2,000,000 products/completed operations aggregate and $2,000,000 general aggregate. The 02 Policy also contains a $1,000 deductible for property damage per occurrence. The 02 Policy is written on Coverage Form CG 00 01 04 13.

36. The 02 Policy contains an Additional Conditions Endorsement (ID 00 06 01 14), which amends the 02 Policy and adds conditions precedent to coverage as follows:

The following conditions precedent to coverage are added to and form part of the policy:

> 1. You must be named an additional insured on the commercial general liability policy of each contractor and subcontractor that performs work on your behalf throughout the time of each such contractor's and subcontractor's performance, and each such policy must provide defense as well as indemnity to you as an additional insured.
>
> 2. You must obtain a certificate of insurance from each contractor and subcontractor that performs work on your behalf prior to the commencement of each such contractor's and subcontractor's work indicating that each such contractor and subcontractor has a commercial general liability policy in effect.
>
> 3. Both the policy within which you are named as an additional insured and the certificate of insurance you obtain must have each occurrence, general

aggregate, and products-completed operations aggregate limits, including sublimits, in an amount equal to or greater than this policy.

4. You must obtain a hold harmless agreement from each of your contractors and subcontractors, indemnifying you against all loss in any way related to the work performed on our behalf by each such contractor and subcontractor.

37. The conditions precedent to coverage set forth in the Additional Conditions Endorsement were not met by Coyote Creek such that the duty to defend or indemnify the Underlying Action was never triggered.

38. The 02 Policy also contains the following exclusions:

**2. Exclusions**

This insurance does not apply to:

***

**a. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

***

(2) Assumed in a contract or agreement that is an "insured contract"…

***

**j. Damage to Property**

"Property damage" to:

***

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

- 8 -

  (6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

***

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

***

  **k.**  **Damage To Your Product**

  "Property damage" to "your product" arising out of it or any part of it.

  **l.**  **Damage To Your Work**

  "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

  This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

  **m.**  **Damage to Impaired Property or Property Not Physically Injured**

  "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

  (1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

  (2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

  This exclusion does not apply to the loss of use or other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

***

  39.  The 02 Policy also contain an amendment to the "your work" exclusion

added through endorsement ID 00 14 08 08, which provides in relevant part:

> The exclusion does not apply if damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor; provided, however, if the damage is caused by, arises out of, consist of, or is aggravated by "water", the most we will pay is $100,000 per occurrence, $100,000 aggregate.

40.     Under the 02 Policy, Section V, Definitions provides, in relevant part:

**SECTION V—DEFINITIONS**

\*\*\*

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\*\*\*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1)  Products that are still in your physical possession; or

   (2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earlier of the following times:

       (a)     When all of the work called for in your contract has been completed.

       (b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. Property damage means:

 a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

 (a) You;
 (b) Others trading under your name; or
 (c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

       \*\*\*

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
   (2) The providing of or failure to provide warnings or instructions.

  41. In addition to the DSI Policy terms described herein, there may also be no coverage for the Underlying Action under the DSI Policies based on other terms, conditions, endorsements, definitions, and/or exclusions, all of which DSI hereby reserves and does not waive.

## FIRST CAUSE OF ACTION
(Declaratory Relief – Against All Defendants)

  42. DSI re-alleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

  43. DSI contends that its obligations under the 02 Policy were not triggered by the Underlying Action as the pre-conditions to coverage, set forth in the Additional Conditions Endorsement, were not met by Coyote Creek.

  44. DSI contends that the allegations in the Underlying Action of defective workmanship standing alone do not constitute an "occurrence" and repair of the alleged defective workmanship or product do not constitute "property damage."

  45. DSI contends that the "contractual liability" exclusion, "damage to property" exclusion, "your work" exclusion, "your product" exclusion, and "impaired property" exclusion apply to limit or exclude coverage for some or all of the damages claimed in the Underlying Action.

  46. DSI reserves the right to raise other terms, limitations, endorsements, exclusions and provision of the DSI Policies that may apply.

  47. DSI contends it owes no duty to defend and/or indemnify Coyote Creek for the claims and damages alleged in the Underlying Action based on the foregoing provisions, exclusions, endorsements, terms and conditions of the 02 Policy.

  48. DSI seeks a declaratory judgment, under 28 U.S.C. § 2201, that the allegations and/or claims for damages asserted in the Underlying Action are not covered,

are limited, and/or excluded by the foregoing provisions, exclusions, endorsements and terms and conditions of the DSI Policies, including the 02 Policy, and not covered and/or potentially covered under the DSI Policies and therefore, DSI does not have, and never had, any duty to defend and/or indemnify Coyote Creek.

49. DSI is entitled to an award of its attorneys' fees pursuant to A.R.S. § 12-341.01 because this matter arises out of contract.

WHEREFORE, DSI respectfully requests the following affirmative relief and declaration that:

1. The DSI Policies, including the 02 Policy, do not provide coverage or potential coverage to defend or indemnify Coyote Creek for the allegations and/or claims arising out of the Underlying Action;

2. Coverage for the Underlying Action was never triggered because the conditions precedent to coverage were not met;

3. Coverage for the Underlying Action is excluded and/or limited by the terms, exclusions, endorsements, and provisions set forth above and any other provisions of the DSI Policies that may apply;

4. DSI is entitled to its attorneys' fees, costs and recoverable interest in this action; and

5. DSI is entitled to such other and further relief as the court may deem just and proper.

**RESPECTFULLY SUBMITTED** this 11th day of May, 2020.

**SANDERS & PARKS, P.C.**

By s/ Jasmina Richter
Jasmina Richter
3030 North Third Street, Suite 1300
Phoenix, AZ  85012-3099
*Attorneys for Plaintiff Developers Surety and Indemnity Company*